United States Bankruptcy Court
Northern District of Illinois
Eastern Division

| | |
|---|---|
| In re:<br><br>Neighborhood Barre, LLC,<br><br>                          Debtor. | Chapter 7<br><br>Bankruptcy No. 18 BK 14703<br><br>Honorable Judge Jack B. Schmetterer |
| Neighborhood Barre, LLC,<br><br>                          Plaintiff<br><br>v.<br><br>Samantha Kennedy,<br><br>                        Defendant. | Adversary No. 18 AP 00215 |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Debtor and Plaintiff, Neighborhood Barre, LLC ("Plaintiff"), filed for bankruptcy relief under chapter 11 of the Bankruptcy Code on May 21, 2018. The Plaintiff-Debtor has been embroiled in this litigation with Creditor and Defendant, Samantha Kennedy ("Defendant"). Plaintiff-Debtor filed the instant, one Count adversary complaint on June 15, 2018, seeking avoidance of any preferential transfer resulting from Defendant's citation lien, pursuant to 11 U.S.C. § 547.

The parties are at odds as to whether Plaintiff should be prohibited from using its cash collateral, whether Defendant is a secured creditor, and whether a Chapter 11 Trustee is necessary in this case. A central issue in these disputes is whether Defendant's citation lien affecting all personal property of the Plaintiff is an avoidable transfer. Plaintiff filed the instant adversary proceeding against Defendant on June 15, 2018, seeking to avoid the transfer of assets to Defendant pursuant to her citation lien as a preference.

Trial was held on December 13, 2018 on Plaintiff's complaint. Both sides presented evidence, the manager of the Plaintiff, Holly Blakeley ("Blakeley"), was called as a witness, and oral closing argument was heard.

For the reasons stated below, it is found and held that the attachment of Defendant's citation lien to any personal property acquired by Plaintiff within the 90-day preference period of

1

the Bankruptcy Code, pursuant to 11 U.S.C. §§ 547(b) and 550(a), is avoidable as a preferential transfer.

The Court now makes and enters the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

### I. Plaintiff's Complaint and Trial

Plaintiff filed the instant complaint on June 15, 2018 and seeks to avoid the citation lien placed upon assets of the Debtor corporation created by Defendant's service of the citation to discover assets.

Defendant, a prior part owner of the Debtor, obtained a judgment against Plaintiff and co-obligors in the Circuit Court of Cook County on January 8, 2019 (Case No. 2014 M4 001113) in the amount of $282,812.95. On January 16, 2018, Defendant commenced supplementary proceedings by serving a citation to discover assets upon Plaintiff. Under Illinois law, the service of that citation to discover assets created a lien on all personal property of Plaintiff in existence at that time, and extending to all personal property thereafter acquired by Plaintiff. 735 ILCS 5/2-1402(m).

Defendant did not actually receive any of the funds from Plaintiff's transfer of property during the 90-day preference period, though both parties agree that Defendant did receive some funds prior to the 90-day preference period. The funds acquired by Defendant prior to the preference period were paid from one of three bank accounts operated by the Plaintiff, only one of which contained any funds, a PNC Bank checking account holding between $1,000 and $5,000. At trial, the parties indicated that Plaintiff and Defendant agreed to disburse some of the funds from Plaintiff's account pursuant to service of the citation to discover assets.

Additionally, during the 90-day preference period, Plaintiff states that it purchased and acquired inventory in the form of athletic wear, water bottles and other such items sold at retail, worth approximately $2,000. Defendant also asserts that Plaintiff acquired approximately $3,200 from sale of several exercise bikes, though that money was never deposited in any of Plaintiff's accounts.

The remaining assets of Plaintiff at the time of its bankruptcy filing included approximately $8,500 worth of office equipment, exercise equipment worth no more than $60,000, and franchise rights and customer lists which Plaintiff asserts had no value at all. In addition to the $282,812.95 judgment owed to Defendant, Plaintiff asserted that it owed an

2

additional $190,000 in unsecured debt, rendering the Plaintiff business insolvent. Plaintiff argued that because of this insolvency, the attachment of Defendant's citation lien to assets and cash acquired during the 90-day preference constituted a preferential transfer, resulting in Defendant potentially receiving more than she would have received had those transfers not been made.

Defendant's primary contention at trial was that, based on Blakeley's schedules in her personal chapter 13 bankruptcy case, Plaintiff was not insolvent at the time of its bankruptcy filing, and therefore no transfer during the 90-day preference period could be avoided. Using this argument, Defendant attempted to discredit Blakely's testimony that she had undervalued assets of the Plaintiff in the instant business chapter 11 bankruptcy by referencing what Defendant contended to be the correct valuations in her later filed personal bankruptcy schedules. Defendant also argued that even if the Court were to find Plaintiff to have been insolvent at the time of the bankruptcy, the attachment of the citation lien did not constitute a transfer within meaning of the Bankruptcy Code.

**III. Evidentiary Issues at Trial**

This Court's final pre-trial order, entered on [Dkt. No. 16], required the parties to submit exhibits and objections thereto in advance of the trial. At trial, two important evidentiary issues were raised by the parties, and must be discussed.

First, Defendant's counsel initially objected to each of the exhibits that Plaintiff intended to use, though she did not timely file such objections beforehand as required by the pre-trial order. Defendant's counsel asserted at trial that she had not been given copies of Plaintiff's exhibits as required by the pre-trial order. Plaintiff's counsel responded, stating that he had emailed Defendant's counsel copies of the exhibits at some point, though he did not have his email records in court and could not identify exactly when he had done so. When asked if he had filed a certificate of service with the exhibits, Plaintiff's counsel argued that he knew of no rule requiring him to do so. The Court then offered Defendant's counsel the opportunity to hold a hearing as to the propriety of allowing Plaintiff to use exhibits he may or may not have given to Defendant. Defendant's counsel then acknowledged that the exhibits Plaintiff intended to use at trial had been filed on the docket of the underlying bankruptcy case and that she had seen them during her review of materials filed in this case, and thereupon withdrew her objections to Plaintiff's use of its exhibits.

3

Second, Plaintiff's counsel indicated that Defendant had filed, the day before trial, an amended list of exhibits, including amended schedules found in Blakeley's personal chapter 13 bankruptcy proceeding. Pursuant to the Court's final pre-trial order, exhibits were due to be exchanged at least two weeks before the trial date. The additional documents had been filed after the deadline to submit exhibits, and without leave of Court.

After careful review of the documents, including comparing them to the original binder of exhibits that had been submitted to the Court in a timely manner, the Court asked whether Defendant's counsel had made any motion to use the untimely filed exhibits, and if not, why she had neglected to do so. In response, Defendant's counsel agreed that she had not sought the Court's permission to file new exhibits on the eve of trial and offered no excuse. It was therefore ordered that the new exhibits would not be admitted into evidence, but Defendant's counsel could proceed with the original exhibits she had timely submitted.

It would seem necessary to remind all counsel that the Pre-Trial Order governs the trial and should be followed so as to avoid such disputes.

## CONCLUSIONS OF LAW

### I. Jurisdiction and Venue

Subject matter jurisdiction lies under 28 U.S.C. § 1334. The district court may refer bankruptcy proceedings to a bankruptcy judge under 28 U.S.C. § 157, and this proceeding was thereby referred here by Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. § 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F).

### II. Defendant's Citation Lien is Avoidable as a Preference Pursuant to 11 U.S.C. § 547

Section 547 of the Bankruptcy Code provides that a Trustee may avoid transfers that occur during the 90 days prior to the filing of a debtor's petition, if certain circumstances are met. In relevant part Section 547 states that:

> "(b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
>
>    (1) to or for the benefit of a creditor;
>
>    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
>    (3) made while the debtor was insolvent;

4

(4) made—

    (A) on or within 90 days before the date of the filing of the petition; or

    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

    (A) the case were a case under chapter 7 of this title;

    (B) the transfer had not been made; and

    (C) such creditor received payment of such debt to the extent provided by the provisions of this title."

11 U.S.C. § 547(b).

In the instant case, the parties argue over three elements of Section 547: Whether any transfer "of an interest of the debtor in property" took place at all within the meaning of the Bankruptcy Code; whether Plaintiff was insolvent at the time of the alleged transfer; and whether Defendant received more than she would have in a Chapter 7 liquidation proceeding.

While the Bankruptcy Code governs the question of whether and when a transfer occurs, pursuant to 11 U.S.C. § 101(54), "state law must be consulted, since, absent a controlling federal interest, the property interests capable of being transferred are 'creatures of state law.'" *In re Karim*, 582 B.R. 193, 197 (Bankr. N.D. Ill. 2018) (quoting *Barnhill v. Johnson*, 503 U.S. 393, 397-98 (1992); *see also Butner v. United States*, 440 U.S. 48, 55 (1979)). Additionally, Section 547(e) of the Bankruptcy Code, which typically only governs priority between competing creditors, is relevant to the preference provisions in that the date of perfection helps to determine the date of transfers between parties. *Id.* "[A] transfer cannot occur under section 547(e) until the debtor actually acquires rights that are capable of being transferred." *Id.*

### A. Pursuant to Illinois Law, A Transfer Within the Meaning of the Bankruptcy Code Took Place During the 90-day Preference Period

Defendant's first contention, that no transfer took place in the instant case, has no merit. The citation to discover assets was served on January 16, 2018. That was a date outside of the 90-day preference period, but the inquiry does not end there. A properly served citation lien creates a lien on a judgment debtor's "nonexempt personal property" that is in its possession or control. *See* 735 Ill. Comp. Stat. 5/2-1402(m)(1) ("in the possession or control of the judgment

5

debtor"); *see also* 735 Ill. Comp. Stat. 5/2-1402(m)(2) ("in the possession or control of the third party"); *Podivenc v. Popov*, 168 Ill. 2d 130, 134 (1995) ("The service of the citation to discover assets on [the judgment debtor] created a general lien in favor of [the judgment creditor] on the property of [the judgment debtor]."); *City of Chicago v. Air Auto Leason Co.*, 297 Ill. App. 3d 873, 878 (1998) ("When the citation is served, it creates a judgment lien upon all personal property belonging to the judgment debtor in the possession or control of the judgment debtor or third party.") (internal quotations omitted).

Any funds or personal property in possession of Plaintiff at the time that the citation was properly served upon it is therefore subject to Defendant's lien. However, under Illinois precedent, a lien cannot exist, "where there is no property to be bound." *Merchants Nat. Bank of Aurora v. Olson*, 27 Ill. App. 3d 432, 434 (1975). Logically, this must be the case: a lien cannot exist on after-acquired property before it is acquired by the party subject to the lien. This principle also applies in the context of judgment liens on after-acquired property. *Breed v. Gorham*, 108 Ill. 81, 85 (1883) (explaining that judgments give rise to liens on after-acquired property only "from the time" that property is acquired). Thus, the date of transfers alleged by Plaintiff in its Complaint, including the date Defendant acquired an interest in the retail inventory (or as Defendant asserts in the related Motion to Prohibit Use of Cash Collateral, the date Plaintiff acquired money that would otherwise be subject to the citation lien) were within the 90-day preference period of the Bankruptcy Code because Plaintiff acquired that inventory or that money during the preference period.

The lien transfers therefore took place during the 90-day period preceding Plaintiff's bankruptcy filing and are avoidable if the additional legal criteria are met.

Defendant's contention that the attachment and perfection of its citation lien on after-acquired property did not constitute a "transfer" within the meaning of the Bankruptcy Code is incorrect. Courts have repeatedly held that the fixing of a citation lien on after-acquired property of a debtor constitutes such a transfer. *Karim*, 582 B.R. at 196; *In re Lifchitz*, 131 B.R. 827 (Bankr. N.D. Ill. 1991); *In re T.M. Sweeney & Sons, LTL Services, Inc.*, 120 B.R. 101 (Bankr. N.D. Ill. 1990).

Therefore, because Defendant's citation lien was fixed upon any and all property that Plaintiff acquired during the 90-day preference period preceding the filing of its bankruptcy petition, and because Plaintiff has shown that other requirements under 11 U.S.C. § 547 have

6

been satisfied as discussed below, Defendant's citation lien on the after-acquired property is a voidable preference.

### B. Plaintiff Was Insolvent at the Time of Transfer

Section 547(b)(3) also requires that for a transfer to be deemed voidable, the transfer must be made when the debtor is insolvent. The debtor is presumed to have been insolvent during the 90 days immediately preceding the filing of the bankruptcy petition, but that is not a conclusive finding, and may be rebutted by evidence presented by the transferee. *Lifchitz*, 131 B.R. at 834; *In re Demetralis*, 57 B.R. 278, 281 (Bankr. N.D. Ill. 1986).

The bulk of testimony and cross-examination at trial dealt with this issue under Section 547. Blakely, the principal of Plaintiff, was called to testify as to insolvency of the business at the time transfers were made. She discussed at length the nature of the equipment, office supplies, and retail inventory of the business when the transfers occurred. She also discussed the amount of money the business brought in, as well as its debts to Defendant and other creditors. She further testified that the schedules she initially put together with Debtor-Plaintiff's attorney were likely too optimistic in their valuation of property and revenue.

To contradict Blakely's testimony, cross-examination by Defendant's counsel focused on the source of Blakey's knowledge regarding the Debtor corporation's finances. It showed that Blakely used several different methods of accounting, including at least two different types of accounting software and a separate accounting service, to keep track of the Debtor's books. In addition to painting Plaintiff's finances as being needlessly confusing, Defendant's counsel also attempted to discredit Blakely's testimony by introducing the schedules and plan from her own individual chapter 13 bankruptcy proceeding to show that those documents contradicted her testimony regarding actual valuation of assets and revenue of the Debtor corporation. When asked why her estimates of the value of the business were higher in the papers filed in her personal bankruptcy, she responded that she did not fully understand how little those assets were worth initially, and had a better idea of their worth as the bankruptcy case had proceeded.

Blakely's testimony is not found to be credible. During her testimony, she offered no real proof or explanation of why her personal estimates of the business value were inconsistent with the corporation's values that it scheduled. Simply asserting that in her personal bankruptcy she better understood the value of the business property, either due to some sale of exercise bikes (of which no evidence was presented other than Blakely's testimony) or some other reason, did

7

nothing to establish that Blakely ever had a credible reason to believe that assets of the Plaintiff were worth either figure the parties now dispute. The only credible piece of evidence offered to the Court are the sworn schedules filed in the instant corporate chapter 11 bankruptcy proceeding. Those schedules show that the Plaintiff-Debtor was insolvent at the time the bankruptcy petition was filed. Blakely's testimony offers little to contradict that admission of value in this case.

Moreover, Defendant has not adequately rebutted the statutory presumption that Plaintiff was insolvent at the time of the transfers. 11 U.S.C. § 547(f). Blakely's testimony was not credible, leaving only the schedules she later filed in her chapter 13 bankruptcy case (introduced as Defendant's exhibits 8 and 9). It was not convincingly proven that the Plaintiff's personal schedules are reliable.

The debtor corporation in this case has a presumption of insolvency during the 90-day preference period, and the schedules filed by it serve to support that conclusion. The sworn schedules in this case indicate that Plaintiff was, in fact, insolvent.

Because of that evidence, and because Defendant was unable to rebut the presumption that Plaintiff was insolvent during the 90-day preference period, it is held that that Defendant was insolvent and any transfers that took place during the preference period are deemed voidable.

### C. Defendant Received More Value than She Would Have in a Chapter 7 Liquidation

Finally, Defendant argues that, even if the Court finds that a transfer had been made within the 90-day preference period, and even if the Plaintiff had been insolvent at the time, Defendant did not receive more value than it would have if the case had been a chapter 7 liquidation. 11 U.S.C. § 547(b)(5).

Defendant's argument is essentially that because she did not receive any actual payments, she could not have received more than she would actually have otherwise received had this case been a chapter 7 liquidation. Defendant is incorrect because she disregards what it is that she did in fact receive. If the citation lien is allowed to stand, it is indisputable that she would receive more than she would in a chapter 7 case.

Whether a transferee-creditor has been preferred in any given instance depends partly upon the nature and extent of that creditor's claim. *In re Schwinn Bicycle Co.*, 200 B.R. 980, 987 (Bankr. N.D. Ill. 1996); *see also Barash v. Public Fin. Corp.*, 658 F.2d 504, 507-08 (7th Cir.

8

1981). An unsecured creditor, such as the judgment creditor in this case, may well be "preferred" because "absent such transfer that creditor would only share pro rata with other holders of allowed unsecured claims in a Chapter 7 distribution." *Schwinn*, 200 B.R. at 987.

Defendant has undoubtedly received something valuable, namely a perfected lien on after-acquired personal property of the Debtor corporation. The fact that these transfers have not yet been received by monetary payments has no bearing on the analysis under 11 U.S.C. § 547(b)(5). Moreover, because a money judgment by itself is merely an unsecured claim, the attachment and perfection of the citation lien upon property of Plaintiff leads to the inevitable conclusion that Defendant would receive more value based upon the citation lien than she would have in a chapter 7 liquidation. As the schedules of the Debtor corporation indicated, Defendant's unsecured money judgment would have shared a minimal distribution with other unsecured creditors whose claims amounted to approximately $190,000.00.

Defendant would receive substantially more than other unsecured creditors. If all after-acquired cash and other personal property of the Debtor corporation were to be subject to Defendant's citation lien, virtually nothing would be left for the other unsecured creditors. Defendant contends that all cash collateral is subject to its citation lien. It cannot also say that such transfers do not put her in a "preferred" position as a creditor.

Therefore, because Plaintiff has shown that Defendant received more valuable rights than she would have in a liquidation due to the attachment and perfection of her citation lien, the transfers that occurred during the 90-day preference period will be deemed voided.

## CONCLUSION

For the foregoing reasons, judgment on this Adversary Complaint will be entered in favor of the Plaintiff by separate judgment order to be entered concurrently herewith.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this ___ day of February, 2019